UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ABL, by his parents and legal  )
guardians, DL and AB, and DL,  )
and AB, individually,          )
                               )
          Plaintiffs,          )
                               )        C.A. No. 22-379 WES
     v.                        )
                               )
PROVIDENCE PUBLIC SCHOOLS,     )
                               )
          Defendant.           )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

ABL, a minor student, and his parents and natural guardians, AB and DL (collectively "Plaintiffs"), seek judicial review and reversal of a final decision by an Impartial Hearing Officer ("IHO") denying Plaintiffs' due process complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. Compl. ¶¶ 1, 96, ECF No. 1. Plaintiffs also bring claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Id. ¶ 2.

Currently pending are cross-motions for partial summary judgment. See Pls.' Mot. Summ. J., ECF No. 9; Def.'s Mot. Summ. J., ECF No. 19. These motions are limited to Plaintiffs' IDEA claims and do not cover Plaintiffs' claims under the ADA or Rehabilitation Act. See Consent Stipulation, ECF No. 21.

For the following reasons, the Court orders the IHO's decision be AFFIRMED IN PART and REVERSED IN PART.

I.    BACKGROUND

A. Individuals with Disabilities Education Act ("IDEA")

Under the IDEA, children with disabilities are entitled to free appropriate public education ("FAPE") in states that receive funding under the statute.  20 U.S.C. § 1400(d); see Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 180-81 (1982).  FAPE consists of "special education and related services designed to meet [the recipient's] unique needs and prepare them for further education, employment and independent living."  20 U.S.C. § 1400(d).  "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability."  Id. § 1401(26). "Related services" are "the support services 'required to assist a child . . . to benefit from' that instruction."  Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 390 (2017) (quoting 20 U.S.C. § 1401(29)).

A student's local educational agency ("LEA") determines whether the student is eligible for FAPE as a "child with a disability."  20 U.S.C. §§ 1401(3), 1414(a)-(c).  If the child is found eligible, then an Individualized Education Program ("IEP") is developed by an IEP team consisting of teachers, an LEA

2

representative, and the child's parent(s). 20 U.S.C. §
1414(d)(1)(A)-(B). The IEP is a written statement that includes
statements of "the child's present levels of academic achievement
and functional performance," "measurable annual goals," plans for
measuring the child's progress towards those goals, the "special
education and related services" to be provided and when they will
be provided, and the extent to which the child will not participate
with nondisabled children. 20 U.S.C. § 1414(d)(1)(A)(i). The IEP
serves as "the centerpiece of the statute's education delivery
system." Honig v. Doe, 484 U.S. 305, 311 (1988). "To 'ensure the
continued adequacy of a child's IEP,' the IEP team must meet at
least annually to reevaluate the special education and related
services being offered by the school district." Doe v. Newton
Pub. Schs., 48 F.4th 42, 48 (1st Cir. 2022) (quoting D.B. ex rel.
Elizabeth B. v. Esposito, 675 F.3d 26, 35 (1st Cir. 2012)).

If there is a disagreement between parents and the LEA, the
parties may seek resolution through a preliminary meeting or
mediation. 20 U.S.C. § 1415(e), (f)(1)(B)(i). "If these measures
fail to produce accord, the parties may proceed to what the Act
calls a 'due process hearing' before a state or local educational
agency," heard by an IHO. Endrew F., 580 U.S. at 391-92 (citing
20 U.S.C. § 1415(f)(1)(A), (g)); see 20 U.S.C. § 1415(b)(6). A
party may then challenge the administrative decision by filing a

civil action.  20 U.S.C. § 1415(i)(2).

B. Facts and Procedural History

The following constitute the unchallenged facts drawn from Plaintiffs' Statement of Undisputed Facts ("PSUF"), ECF No. 10, and Defendant's Statement of Undisputed Facts ("DSUF"), ECF No. 19-3, which in turn draw from the Due Process Hearing transcript, ECF No. 11, and exhibits admitted during the Hearing, ECF Nos. 27-29.  The Court focuses on the facts most pertinent to the issues raised in the parties' motions.

1. Early Life

Plaintiff ABL is a bright, charming, and engaging boy who was diagnosed with an in-utero stroke and resulting Left-Hemiplegic Cerebral Palsy.  PSUF ¶¶ 3, 8.  The stroke affected him more on the right side of his brain, which controls the left side of his body.  Id. ¶ 9.  As a result, ABL has limited use of his left hand, severe hearing loss in his left ear, and an impaired gait.  Id. ¶¶ 10, 12.  He has fatigue resulting from difficulties with postural control, and difficulties with muscle strength and tone, motor control, and "executive functioning skills."  Id. ¶¶ 11, 14.  "His vision has also been affected."  Id. ¶ 13.  ABL's disability is "unique" given "the location and nature of his stroke."  Id. ¶ 15.

Plaintiffs DL and AB ("Parents") are ABL's parents and natural guardians.  Id. ¶ 4.  Defendant Providence School District

("Providence") is the LEA responsible for providing ABL with a FAPE pursuant to the IDEA.  Id. ¶ 5.

Parents enrolled ABL in Early Intervention Services when he was eight weeks old, which included occupational therapy ("OT") and physical therapy ("PT"), due to concerns about his left hand. Id. ¶ 7; see Tr. 22.  At age three, noting "developmental delays in speech, gross and fine motor control, and learning readiness skills," they transitioned him to an Individualized Education Program ("IEP") administered by Providence.  PSUF ¶ 16.

ABL's preschool IEP provided for on-site speech therapy, OT, and PT.  Id. ¶ 18.  In February 2016, during ABL's final year of preschool, Parents paid for ABL's first neurological evaluation, conducted by Dr. Rachel Baldwin.  Id. ¶ 19.  Dr. Baldwin determined that ABL had "strong nonverbal reasoning skills and relatively evenly developing verbal and nonverbal intellectual skills," but faced challenges in math and other "challenges related to weaknesses in right-hemisphere functions and executive functioning."  Id. ¶¶ 20-21 (quoting PX65, Neurodevelopment Center Confidential Neuropsychological Evaluation (June 25, 2010) 450, ECF No. 28-28).

2. Transition to Elementary School

Before ABL's transition to kindergarten, two IEP meetings were held.  Id. ¶ 22.  Dr. Baldwin's report was reviewed at the

first meeting.  Id. ¶ 23.  At the second meeting, Henry Barnard School ("Henry Barnard"), a private school, was considered for ABL's placement.  Id. ¶¶ 24-25.  Parents enrolled ABL at Henry Barnard from kindergarten through third grade, with Parents paying tuition and Providence providing special education services through an IEP.  Id. ¶ 28; DSUF ¶ 2.

During kindergarten, accommodations for ABL's hearing impairment, including Adaptive Physical Education ("APE"), were added to his IEP.  PSUF ¶¶ 30-31.

### 3. First Grade (2017-2018)

ABL's first grade IEP addressed writing, APE, PT, and fine motor skills.  DSUF ¶ 3.  In first grade, around November 2017, a Teacher for the Visually Impaired was added to ABL's IEP team on a consultative basis after ABL was found to have vision difficulties.  PSUF ¶¶ 32-33; Compl. ¶ 33; Answer ¶ 33, ECF No. 4.

### 4. Second Grade (2018-2019)

ABL's second grade IEP, for May 2018 to May 2019, addressed writing and related services (APE, OT, and PT), OT consultation, vision consultation, and a Teacher of the Deaf.  PSUF ¶ 35.  In November and December 2018, on Providence's behalf, Rebecca Klockars conducted an OT assessment and Jennifer Martinous conducted an assistive technology assessment.  Id. ¶¶ 39, 44.  Klockars found ABL struggled to maintain postural control,

experienced fatigue, and had "decreased organization, motor coordination, visual closure and vestibular processing skills which impact his ability to fulfill daily duties related to being a student." Id. ¶ 40-41 (quoting PX34, Occupational Therapy Evaluation (Dec. 14, 2018), ECF No. 28-2). Klockars recommended regular direct OT services and consultations. Id. ¶ 42. "To date, Providence has not done any subsequent OT assessment." Id. ¶ 43.

Martinous determined ABL needed technological support, in part because he primarily uses one hand and his special educator reported concerns with ABL's math skills. Id. ¶¶ 44, 46, 49. Martinous recommended the IEP team develop an assistive technology plan to include additional technological training and a contact person for technical support, especially for the educational software programs because ABL could not use them independently. Id. ¶¶ 44-45, 47-48; see id. ¶¶ 37-38. Martinous also recommended that "the appropriateness of hardware and software be reviewed at least annually." Id. ¶ 50. "The recommendation for annual reviews has not been followed; Providence has never requested another [assistive technology] assessment for ABL." Id. ¶ 51.

On December 14, 2018, an IEP meeting was held where the Henry Barnard math data was reviewed. Id. ¶ 53. "The minutes note that fact fluency under 10 was an issue and that [ABL's] effort was inconsistent when given flash cards." Id. ¶ 54. However, math

was not added to the IEP and "Providence did not initiate an evaluation for a math disability."  Id. ¶ 55.  ABL's second grade report card showed a need for support in math.  Id. ¶ 56.

        5. Third Grade (2019-2020)

    In third grade, an IEP meeting was held on December 14, 2019, and a new IEP was established for January 2019 to January 2020. Id. ¶ 57.  The IEP provided for special education in writing, APE, OT, OT consultation, vision consultation, and a Teacher of the Deaf.  Id. ¶ 58.  Math was not added to the IEP and Providence did not initiate its own math evaluation, but Henry Barnard conducted an eight-week review of ABL's math performance, which indicated that ABL needed support in math.  Id. ¶¶ 59-60; see DSUF ¶ 4. Concerned about ABL's struggles with math and the software programs, Parents hired a tutor in January 2020.  PSUF ¶¶ 61-63.

    On or about March 16, 2020, schools were closed due to Covid-19.  Id. ¶ 66.  ABL transitioned to distance learning for both his general education from Henry Barnard and his special education from Providence.  Id.  "ABL required complete adult support to participate in distance learning."  Id. ¶ 67.

    From March 15, 2020, to the end of third grade, ABL received no APE, one OT session, and some resource support for writing via distance learning.  Id. ¶ 81.  Walk-in services were not available due to Covid-19.  Id. ¶ 87.

6. Fourth Grade (2020-2021)

On June 8, 2020, at an IEP meeting, Parents decided to homeschool ABL for the 2020-2021 school year, with walk-in special education from Providence.  Id. ¶ 68-69; DSUF ¶¶ 5, 8; Pls.' Statement Disputed Facts and Resp. Def.'s Statement Undisputed Facts ("PSDF") ¶ 8, ECF No. 23.  The IEP was not changed to reflect homeschooling, and there was no notice that homeschooling would affect ABL's right to special education.  PSUF ¶¶ 76-77.  Math issues were discussed at the IEP meeting, but math was not added to the IEP.  PSUF ¶ 70.  The IEP team recommended Parents obtain a math evaluation.  Id. ¶ 74; see id. ¶¶ 59, 70-73.

Dr. Baldwin conducted a math evaluation on June 22, 2020, and diagnosed ABL with Dyscalculia, a Specific Learning Disorder with Impairment in Mathematics.  Id. ¶ 82; DSUF ¶ 6.  Dr. Baldwin noted that "ABL's challenges with working memory, regulation of attention, fatigue, visual and auditory impairments, and motor weaknesses all interfere with his learning and expression of skills and need to be accommodated in conjunction with a specific special education curriculum in mathematics."  PSUF ¶ 84 (quoting Compl. ¶ 61).  On several occasions in August 2020, AB discussed Dr. Baldwin's report with Providence and requested math be added to the IEP, but an IEP meeting was not held until October 9, 2020. Id. ¶¶ 85-86, 90; see DSUF ¶ 7.  At the meeting, Providence

indicated it could not add math to the IEP without conducting its own math assessment. Id. ¶¶ 91-92. "No explanation was ever provided why Providence had not offered to do its own math assessment at the outset." Id. ¶ 93.

By the next IEP meeting on December 4, 2020, "ABL had still not received any IEP services . . . during the 2020-2021 school year, and Providence had failed to conduct the eight-week math intervention." Id. ¶ 95. Providence special education teacher Alisha Mooney attributed the lack of IEP services to "Covid-19 restrictions and internet access problems." Id. ¶ 96. At the December 4 meeting, ABL was qualified for math special education, but the IEP was not yet revised to reflect math services. DSUF ¶ 10; PSDF ¶ 10. Beginning on December 7, 2020, ABL and Mooney met through Google Classroom for math and writing. PSUF ¶¶ 97-98. The writing sessions were conducted during a reading group for younger children. Id. ¶ 99.

Four IEP meetings were held in January 2021. Id. ¶¶ 100, 102-04, 112-15. The IEP team recommended Young Woods Elementary School ("Young Woods") for ABL's placement. DSUF ¶ 25. The 2021-2022 IEP included math services. See PX6, 2021-2022 IEP (Jan. 8, 2021), ECF No. 27-5. Parents disagreed with the Young Woods placement and continued homeschooling ABL and utilizing Providence's special education in math and writing. PSUF ¶¶ 116-

17.    Parents "notified Providence in writing of their intent to place ABL at the Wolf School unilaterally at public expense." Id. ¶¶ 105-06; see DSUF ¶ 11.  Parents did not enroll ABL at Wolf until September 2021.  PSUF ¶¶ 111, 139.

In March of 2021, Parents and Providence went to mediation about school placement.  DSUF ¶ 13; see Tr. 86-87.  They did not reach a resolution, but Providence permitted Parents to visit Young Woods.[1]  DSUF ¶ 13.  On April 28, 2021, ABL's last progress report for the 2020-2021 year was issued.  PSUF ¶ 128.  It stated that "distant learning has created barriers that inhibit [ABL's] full potential" and an absence of sufficient data to show ABL's progress in math.  Id. ¶¶ 129-30 (quoting PX14, Measurable Annual Academic or Functional Goal(s) (Apr. 30, 2021) 118, ECF No. 27-10).

In April and May 2021, Dr. Baldwin assessed ABL and diagnosed him with "Left Hemiplegia, Attention-Deficit/Hyperactivity Disorder (Predominantly Inattentive Type), Developmental Coordination Disorder (including Dysgraphia)," and Dyscalculia. Id. ¶ 131.  Dr. Baldwin recommended, inter alia, small class size, low educator-to-student ratio, a daily occupational therapist, and

---

[1] Plaintiffs also state, and Defendant does not dispute, that Parents and Dr. Baldwin toured the Young Woods school in Spring of 2020.  PSUF ¶ 78.  They were not shown breakout rooms and were not given the chance to speak with a teacher or occupational therapist there.  Id. ¶¶ 79-80.

one-to-one support in math.  Id. ¶ 134.

For the 2020-2021 academic year, ABL did not receive APE, did not receive OT until April 15, and "did not receive any math or writing support until the second week of December 2020," with some subsequent dates of service cancelled.  Id. ¶ 135.

### 7. Fifth Grade (2021-2022)

On August 10, 2021, Parents again notified Providence that they would be placing ABL at Wolf and declined placement at Young Woods.  Id. ¶ 137.  Providence did not make any changes to the IEP or offer additional assessments.  Id. ¶ 138.  ABL began attending Wolf in September 2021.  Id. ¶ 139.

### 8. Due Process Hearing and Instant Posture

On January 28, 2022, Parents filed their due process hearing request under 20 U.S.C. § 1415(f).  Id. ¶¶ 184, 186.  Providence retained neuropsychologist Dr. Dana Osowiecki as an expert witness.  Id. ¶ 187.  Parents objected to Providence performing an evaluation at that time, but Dr. Osowiecki conducted an evaluation in March and April 2022.  Id. ¶ 188.  At the hearing, Providence introduced the 2022-2023 IEP, which the IHO admitted into evidence over Plaintiffs' objections.  Id. ¶ 190.

On September 20, 2022, the IHO issued his decision.  Id. ¶ 197; see Decision, A.B.L. by his Parents, A.B. and D.L. v. Providence Sch. Dist., Case No. LL 22-01 (R.I. Dep't Educ. Sept.

20, 2022) ("Decision"), ECF No. 16.  The IHO found Plaintiffs failed to meet their burden of proof.  Decision 3.  Specifically, he found Dr. Baldwin "was unable to say that Providence's IEP could not be implemented nor its goals be met since she had never reviewed the IEP." Id. at 2.  He also found "no basis for believing that ABL's needs could not be met at the [Young Woods] proposed placement.  To the contrary, the record suggests that the proposed IEP could meet reasonable goals for ABL and that ABL could do so at [Young Woods]." Id.  The IHO further observed that "ABL's parents never gave Providence a chance to provide FAPE to ABL" because "ABL never attended the Providence Public Schools," and the Parents' objection to Young Woods meant they "impliedly rejected the compensatory services which had been offered in the IEP." Id. at 2-3.

Plaintiffs now seek reversal of the Decision along with awards of compensatory education and Wolf tuition reimbursement.  Pls.' Mot. 1.  Plaintiffs also seek a declaration that they are prevailing parties under IDEA and permission to move for attorneys' fees.  Id.  Defendant asks the Court to uphold the Decision. Def.'s Mot. 1.

II. LEGAL STANDARD

When reviewing an administrative decision under the IDEA, the district court reviews the administrative record and any

additional evidence provided by the parties, and then issues "an independent ruling based on a preponderance of the evidence." Town of Burlington v. Dep't of Educ. for Commw. of Mass., 736 F.2d 773, 790 (1st Cir. 1984), aff'd sub nom. Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359 (1985) (footnote omitted); see 20 U.S.C. § 1415(i)(2)(C).  But "[t]hat independence is tempered by the requirement that the court give 'due weight' to the hearing officer's findings.  This intermediate level of review reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena." LT. T.B. and E.B. ex rel. N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83 (1st Cir. 2004) (quoting Rowley, 458 U.S. at 207).  Accordingly, the court's review of the hearing officer's factual findings "falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard." Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 24 (1st Cir. 2008). However, the court reviews the hearing officer's rulings of law de novo.  See Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 111-12 (D. Mass. 1999), aff'd 229 F.3d 1133 (1st Cir. 2000).

Cross-motions for summary judgment are "'simply a vehicle' for providing review of the underlying administrative ruling." S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir.

2014) (quoting Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 85 (1st Cir. 2012)).  Thus, the court disregards the typical summary judgment standard of "consider[ing] the facts in the light most favorable to the non-moving party."  Bristol Warren Reg'l Sch. Comm. v. R.I. Dep't of Educ., 253 F. Supp. 2d 236, 240 (D.R.I. 2003).  Instead, "'[t]he party challenging the outcome of the . . . administrative decision bears the burden of proof.'"  Id. (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) (alteration in original)).

III. DISCUSSION

The Court first lays out the relevant time-period based on the statute of limitations.  Then, the Court considers whether Providence deprived ABL of FAPE.  Finally, for any instances of FAPE denials, the Court considers whether a remedy of compensatory education and/or reimbursement is warranted.

A. Relevant Time Period and IEPs

The IDEA has a two-year statute of limitations.  20 U.S.C. § 1415(b)(6)(B).  The parties agree that, since Plaintiffs filed their due process complaint on January 28, 2022, Plaintiffs may only seek relief for deficiencies occurring after January 28, 2020.  Pls.' Mem. Support Mot. Summ. J. ("Pls.' Mem.") 28, ECF No. 9-1; Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") 13, ECF No. 19-1.  Two IEPs cover that two-year period: the IEP from January 13, 2020,

to January 12, 2021, ("2020-2021 IEP") and the IEP from January 25, 2021, to January 24, 2022 ("2021-2022 IEP").  Def.'s Mem. 13.

As discussed, from January 28, 2020, to about June 8, 2020, ABL attended Henry Barnard while receiving special education from Providence.  PSUF ¶¶ 28, 66.  Then, ABL was homeschooled with special education services from Providence until September 2021, when Parents enrolled him at Wolf.  PSUF ¶¶ 68-69, 139; DSUF ¶¶ 5, 8; PSDF ¶ 8.

B.  Free Appropriate Public Education

The FAPE requirement centers around what is written in a student's IEP.  See M. v. Falmouth Sch. Dep't, 847 F.3d 19, 28 (1st Cir. 2017); 20 U.S.C. § 1414(d).  "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 580 U.S. at 399.  This means "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." Id. at 404.  The process "requires a prospective judgment by school officials," "informed not only by the expertise of school officials, but also by the input of the child's parents." Id. at 399.  At the same time, "[a]n IEP is a snapshot, not a retrospective." Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991); see also Doe v. Belchertown Pub.

16

Schs., 347 F. Supp. 3d 90, 102 (D. Mass. 2018) ("Concerns that were not known to the School District cannot be a basis for finding an IEP was not reasonable.").

Here, regarding FAPE, the IHO determined that Plaintiffs failed to prove the 2020-2021 IEP was deficient without math because Dr. Baldwin, who determined ABL's needs in math, had not reviewed the IEP and could not testify to its adequacy. Decision 2. He also found "no basis for believing that ABL's needs could not be met at the [Young Woods] proposed placement. To the contrary, the record suggests that the proposed IEP could meet reasonable goals for ABL and that ABL could do so at [Young Woods]." Id. Relatedly, the IHO stated that Parents "never gave Providence a chance to provide FAPE to ABL" because "ABL never attended the Providence Public Schools." Id.

1. Private School and Homeschooling

Regarding the IHO's statement that ABL had not attended a Providence school, it is unclear whether the IHO was speaking to ABL's general entitlement to FAPE or to his available remedies. The Court sees nothing to indicate that ABL's private school attendance or homeschooling, as a fact alone, precludes his entitlement to FAPE because throughout that time, he received special education contemporaneously from Providence through the IEPs. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 233

17

(2009) (holding that IDEA does not "categorically bar" private-tuition reimbursement for a FAPE deprivation if the child has not yet attended a public school).[2]

   2. Math Special Education and Assistive Technology

Plaintiffs argue that Providence failed to provide FAPE because (1) it excluded special education in math from the 2020-2021 IEP and (2) beginning in December 2021, Providence provided inadequate special education in math.  Pls.' Mem. 29, 36. According to Plaintiffs, "Providence had ample information before January 28, 2020 to know it should have evaluated ABL for a math disability and provided him with special education in math, but it did not add math to ABL's IEP until the January 25, 2021 IEP."

---

[2] As Providence points out, there may be outstanding issues with respect to FAPE for students who are homeschooled.  Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") 19-20, ECF No. 19-1.  The Court need not resolve that issue because the focus here is on the special education provided by Providence through the IEPs, not the homeschooling curriculum.  The record indicates an understanding amongst the parties that the IEPs would continue during the homeschooling.  DSUF ¶ 8; Pls.' Reply Mem. Supp. Mot. Summ. J. & Mem. Opp'n [Def.'s] Mot. Summ. J. ("Pls.' Opp'n Mem.") 6, ECF No. 22-1 ("Kellie Gerard, who served as elementary manager of specialized instruction and services in Providence in the 2020-2021 school year, testified that home schooled students were eligible for compensatory education for services due to the pandemic." (citing Tr. 428:20-21, 429:24, 430:1-4)); Pls.' Mem. Support Mot. Summ. J. ("Pls.' Mem.") 9, ECF No. 9-1 (citing Tr. 100:11-15, 880:23-24, 888:1; PX77, Meeting Notes (June 8, 2020), ECF No. 28-37) (noting Providence did not inform Plaintiffs that homeschooling would interfere with ABL's right to FAPE).

Id. at 31.  For example, Plaintiffs point to Dr. Baldwin's report that five-year-old ABL was at risk for challenges in math.  Id. at 31-32 (citing PX65 at 450); see also id. at 32 (citing Tr. 675:7-8) (noting Dr. Osowiecki agreed with Dr. Baldwin's assessment).  Plaintiffs says this report put Providence "on notice that it should, at least annually, review ABL's academic achievement in math."  Id.  Additionally, ABL demonstrated a need for support in math in second grade.  Id. (citing PX28, Progress Report 2018-2019 170, ECF No. 27-24; PX35, Assistive Technology Evaluation (Dec. 11, 2018), ECF No. 28-3).  Further, Plaintiffs note, Providence's witness Dr. Osowiecki spoke to ABL's needs in math.  Id. at 32-33 (citing Tr. 664:16-17, 679, 711:5; DX3, Neuropsychological Evaluation Report by Drs. Osowiecki, Mieczynski, Ziady (Mar. & Apr. 2022) 27, ECF No. 29-2).

Plaintiffs acknowledge Providence's stated reasons for not deeming ABL eligible for math special education until January 2021: (1) "ABL's math performance was not sufficiently below grade level to demonstrate a math disability;" and (2) "Providence was required to use 'Response to Intervention' (RTI) prior to finding ABL eligible for math special education."[3]  Id.

---

[3] "Response to Intervention" or "RTI" is a "school[-]wide approach that addresses the needs of all students."  Pls.' Mem. 35 (quoting PXA, Memo. from Melody Musgrove to State Directors of Special Education (Jan. 21, 2011) 1, ECF No. 9-2).  "RTI may rule

To counter Providence's first reason, Plaintiffs cite <u>Doe v.</u> <u>Cape Elizabeth School District</u>, 832 F.3d 69 (1st Cir. 2016), to say a school district must look to more than a child's general academic achievement in a subject to determine disability.  Pls.' Mem. 33 (citing <u>Cape Elizabeth</u>, 832 F.3d at 88).  As a parallel to the reading fluency example in <u>Cape Elizabeth</u>, Plaintiffs note that 34 C.F.R. § 300.309(a)(1)(vii) "identif[ies] that math calculation is a separate factor that can establish math disability."  <u>Id.</u>  Pointing to Dr. Baldwin's 2020 testing, "ABL was at the 9th percentile for mental computation and estimation, the 5th percentile for addition and subtraction, and the 9th percentile for multiplication." <u>Id.</u>[4] Further, ABL's "report cards at [Henry Barnard] consistently showed that he needed support in math calculations."  <u>Id.</u> at 34 (citing PX27, Progress Report 2017-2018, ECF No. 27-23; PX28; PX29, Progress Report 2019-2020, ECF No. 27-25).  Henry Barnard "provided documentation of its [math] intervention with ABL to be considered at the June 8, 2020 IEP meeting."  <u>Id.</u> (citing PX43, Email from Jennie Schwab to Alana

---

out other reasons for the academic problems, such as inferior quality of instruction." <u>Id.</u>

[4] Plaintiffs cite to PX6, at 483, but the Court presumes this to be a typographical error intended to cite PX67, Confidential Targeted Psychoeducational Evaluation (June 22, 2020) 483, ECF No. 28-30.

Bibeau et al. (June 7, 2020) 2, ECF No. 28-8; PX77, Meeting Notes (June 8, 2020) 2, ECF No. 28-37).

As to Providence's reasoning that it had to use RTI before determining ABL's need for math special education, Plaintiffs cite a decision by the U.S. Department of Education, Office of Special Education and Rehabilitative Services, which concluded "States and LEAs have an obligation to ensure that evaluations of children suspected of having a disability are not delayed or denied because of implementation of an RTI strategy." Id. at 35 (quoting PXA, Memo. from Melody Musgrove to State Directors of Special Education (Jan. 21, 2011) 1, ECF No. 9-2). Plaintiffs further highlight that RTI focuses on issues with academic setting and instruction, but "[n]one of Providence's witnesses suggested" that ABL's school or instruction caused ABL's challenges in math. Id. And "[g]iven that ABL's math disability was neurologically based, there was no need for RTI to be used." Id. "[E]ven if Providence thought RTI was necessary, Providence should have begun RTI no later than January 2020. . . . Providence offered no reason for not initiating RTI by January 2020 at the latest." Id. at 36.

Providence began providing ABL with special education in math in December 2020,[5] but Plaintiffs argue it was inadequate. Id.

_____

[5] At one point, Plaintiffs write "Providence did begin providing a special educator to work in math with ABL as of December 7, 2021." Pls.' Mem. 36. The Court presumes this is a

36-37, 53-54.   Specifically, Plaintiffs state the computer programs used for the math special education were "inaccessible" to ABL.  Id. at 36-37.  Despite Parents notifying the math teacher and Providence representatives about ABL's struggles with using the programs, "Providence did not provide an [assistive technology] assessment," "did not consult with anyone . . . to determine whether the computer programs could be made accessible, such as by providing macros," and did not provide ABL with a one-handed keyboard.  PSUF ¶¶ 118, 120-25; see also Pls.' Mem. 54; id. 5-6.  Additionally, Plaintiffs note that Providence provided less hours of math special education than was prescribed in the 2021-2022 IEP.  Pls.' Mem. 36 (citing PX6; PX9, Intervention Progress Report and Data Analysis (Dec. 11, 2018), ECF No. 27-8).  Plaintiffs also raise issues regarding Covid-19 remote learning, id. at 37, which the Court discusses below.

In its Motion, Providence posits that "to constitute a denial of FAPE, the lack of a mathematics goal would need to result in substantive harm," and Plaintiffs failed to show substantive harm.  Def.'s Mem. 21 (citing J.N. v. Jefferson Cnty. Bd. of Educ., 12 F.4th

_____

typographical error and should state December 7, 2020.   See id. (later referencing December 7, 2020); PSUF ¶¶ 97-98.

1355 (11th Cir. 2021)).[6]

In response, Plaintiffs assert Providence's reliance on <u>J.N.</u> <u>v. Jefferson County Board of Education</u> is "misplaced" because, unlike in <u>J.N.</u>, Plaintiffs have shown that ABL suffered substantive harm.  Pls.' Reply Mem. Supp. Mot. Summ. J. & Mem. Opp'n [Def.'s] Mot. Summ. J. ("Pls.' Opp'n Mem.") 4, ECF No. 22-1.  Specifically, "the record demonstrates that the failure to provide appropriate math special education for nearly a year and a half deprived ABL of the opportunity to make educational progress during that time." <u>Id.</u>  "[O]nce ABL was provided with appropriate special education in math at Wolf, he made significant progress in math."  <u>Id.</u> at 5. However, "[t]he record also reflects that ABL is still well below grade level in math; had he been given appropriate special education services in math for the year and a half in question, he would have had the opportunity to get closer to grade level."  <u>Id.</u>

Looking to the IHO's decision, the Court understands why the IHO took issue with Dr. Baldwin's inability to testify as to the IEP.  <u>See</u> Decision 2.  However, Parents need not "put forward experts who specifically labeled the IEPs inadequate, rather than experts who merely testified to facts based on which the District

---

[6] Providence cites to the Individuals with Disabilities Law Reporter ("IDELR") in its materials.  This Memorandum and Order cites to federal court reporters.

Court could supportably conclude the IEPs were inadequate." Falmouth Sch. Dep't v. Doe ex rel. Doe, 44 F.4th 23, 39 (1st Cir. 2022). The IHO did not discuss the other sources of evidence regarding ABL's math performance. See generally Decision. Nor did he explicitly address whether the absence of math services in the 2020-2021 IEP was a FAPE denial, but instead focused on Parents' placement of ABL at Wolf instead of Young Woods. See id. at 2. While the Court owes a certain level of deference to the IHO, both parties acknowledge that less deference is afforded to a "conclusory" decision. Pls.' Mem. 28; Def.'s Mem. 11 (citing Marc M. v. Dep't of Educ. Haw., 762 F. Supp. 2d 1235, 1242 (D. HI. 2011)).

The Court finds Plaintiffs have established by a preponderance of evidence that, with the omission of special education for math, the 2020-2021 IEP was not "reasonably calculated to enable [ABL] to make progress." Endrew F., 580 U.S. at 399. It is apparent from the face of the 2020-2021 IEP that no special education for math was provided. See generally PX6. As highlighted by Plaintiffs, evidence indicating ABL's need for support in math, available at the time of the 2020-2021 IEP's drafting, includes:

- Dr. Baldwin's 2016 Neuropsychological Evaluation (PX65 at 450) ("He is at particular risk for challenges with

24

his academic development in mathematics. Close monitoring of his cognitive and academic progress will be important, particularly as demands increase with age.");

- The Henry Barnard progress reports for 2017-2018 (PX27), 2018-2019 (PX28), and 2019-2020 (PX29), indicating that ABL performed several mathematics skills "with support" rather than "independently," and was "not meeting" or "approaching" grade level expectations[7]; and

- Concerns communicated to Providence by Parents and ABL's second grade teacher (Tr. 24, 37-39).

Thus, Providence denied FAPE by omitting math special education from the 2020-2021 IEP. The remedy for this is discussed below.

However, Plaintiffs have not shown by a preponderance of evidence that the subsequent math services provided, including as outlined in the 2021-2022 IEP, were so insufficient as to amount to a FAPE denial.

### 3. Covid-19 FAPE Arguments

Plaintiffs argue Providence deprived ABL of FAPE by failing to provide ABL with the prescribed APE, OT, and writing special

---

[7] It is unclear to what extent ABL's 2019-2020 progress report was available for Providence's consideration at the time of drafting the 2020-2021 IEP.

education services due to Covid-19.  Pls.' Mem. 44-46.  They also argue, for math and writing, ABL "did not make any educational progress . . . during this time because virtual learning did not benefit him," due to his hearing impairment and audio difficulties with Zoom.  Id. at 45-46; see id. at 37; PSUF ¶¶ 126-27.

Providence implicitly acknowledges there was a FAPE deprivation in that it offered certain levels of compensatory education in the 2021-2022 IEP.  Def.'s Mem. 20 (citing PX6).  The Court finds ABL was denied FAPE in these respects and considers the arguments for compensatory relief below.

### 4. Speech Therapy

Plaintiffs argue, based on Dr. Osowiecki's testimony, Providence should have provided ABL with speech therapy.  Pls.' Mem. 54 (citing Tr. 657:9-11, 697:7, 710:20-22).  Considering the evidence available at the time the IEPs were developed, Plaintiffs have not shown by a preponderance of evidence that Providence deprived ABL of FAPE by omitting speech therapy from the IEPs.

### 5. Occupational Therapy ("OT") and Other Issues with Young Woods

Plaintiffs argue Providence failed to provide ABL with FAPE for his OT needs, which is one of the reasons why Parents declined the Young Woods placement.  See id. at 49-52.  They note the 2020-2021 and 2021-2022 IEPs prescribed OT at lesser levels than recommended by Providence's most recent evaluation of ABL from

2018.  Id. at 50-51.  They also take issue with the 2021-2022 IEP's prescription of OT "as indicated by staff or therapist," id. at 52, because it fails to provide "the anticipated frequency, location, and duration" of the OT, id. at 49 (quoting 34 C.F.R. § 300.320(a)(7)).  In addition to OT issues, Parents declined the Young Woods placement because, as opined by Dr. Baldwin, physical elements of the school building would be "too over stimulating [sic] and difficult and would be too taxing for ABL."  DSUF ¶¶ 17-18, 22.

Providence highlights that Plaintiffs presented no witnesses to speak to the OT goals in the IEPs, Def.'s Mem. 16, and "the teacher who would have been ABL's teacher [at Young Woods] testified that all day, the teachers make accommodations for their students depending on the student's needs at the moment," id. at 17 (citing Tr. 576).  Additionally, teacher of the deaf, Alicia Aceto, Young Woods interim principal, Dr. William Reilly, visual impairment teacher, Danielle Pelsch, and teachers Bridget Anne Richardson and Krystal Lynn Interlini, all testified that certain needs could have been met at Young Woods.  DSUF ¶¶ 27-32; see PSDF ¶¶ 27-32.

As to concerns about the Young Woods building—specifically, the size and physical structure of the school and classrooms—testimony from principal Dr. Reilly and teacher Richardson

demonstrates how those concerns could be accommodated.  Def.'s Mem. 17-18 (citing Tr. 494-505, 577-89).

The Court finds Plaintiffs have not shown, by a preponderance of evidence, that the Young Woods placement constituted a FAPE denial.  Plaintiffs' evidence focuses on the positives of the Wolf placement, but Plaintiffs must first show the Young Woods placement to be a deprivation of FAPE, and they have not done so.

C. Available Remedies

To remedy FAPE denials, courts may award compensatory education and/or reimbursement of educational expenses.  Roe v. Healey, 78 F.4th 11, 16 (1st Cir. 2023) (citing Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 188-89 (1st Cir. 1993); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 19 (1st Cir. 2006)).  "Compensatory education consists of 'future special education and related services to ensure or remedy a past denial of a FAPE.'"  Id. (quoting Doucette v. Georgetown Pub. Schs., 936 F.3d 16, 32 (1st Cir. 2019)).  "Reimbursement of educational expenses is limited to money spent by parents 'for education-related expenditures that the state ought to have borne.'"  Id. (quoting Doucette, 936 F.3d at 32).  The IDEA grants courts "broad discretion" to grant relief.  Sch. Comm. of Town of Burlington, 471 U.S. at 369.

Here, the IHO observed that Parents' objection to Young Woods meant they "impliedly rejected the compensatory services which had

been offered in the IEP." Decision 3. He also deemed reimbursement for Wolf tuition inappropriate because "[P]arents have not diligently pursued the provision of appropriate services from [Providence]," "failed to show that Providence did not provide appropriate services to ABL in its proposed IEP," and "failed to prove that Wolf School was a suitable alternative." Id. at 3.

At the outset, the Court notes that it only considers remedies for what have been deemed FAPE denials: here, the omission of math from the 2020-2021 IEP and the Covid-19 disruptions.

1. Math Compensatory Education

Plaintiffs assert ABL is entitled to compensatory education for Providence's failure to account for special education in math in the 2020-2021 IEP. Pls.' Mem. 29, 36-37. Based on the 2021-2022 IEP's prescription of five hours per week of math special education, Plaintiffs seek 265 hours of compensatory education for math, for the period of January 28, 2020, to June 30, 2021. Id. at 36-37 (citing PX6).

The Court finds Plaintiffs are entitled to compensatory education for hours of special education in math that should have been covered by the 2020-2021 IEP, in an amount to be determined. See, e.g., S.C. ex rel. N.C. v. Chariho Reg'l Sch. Dist., 298 F. Supp. 3d 370, 391 (D.R.I. 2018).

2. Covid-19 Compensatory Education

Plaintiffs seek compensatory education for the Covid-related FAPE denials from March 16, 2020, to June 30, 2021, specifically regarding APE, OT, and writing special education. Pls.' Mem. 44-46. Providence argues it offered compensatory education for ABL's time at Henry Barnard during Covid-19, which Parents declined. Def.'s Mem. 9. Plaintiffs respond that the amount of compensatory education offered was improper. Pls.' Opp'n Mem. 8-9.

The Court finds Plaintiffs are entitled to compensatory education for the Covid-related FAPE denials in an amount to be determined.

D. Reimbursement

To gain reimbursement for ABL's unilateral placement at Wolf, Parents must show that FAPE was denied, the unilateral placement was proper, and no equitable reasons warrant denying the public funding. Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12, 16 (1985); Doe, 48 F.4th at 56. "Like the standard for a FAPE, to be 'proper,' a private school placement must be 'reasonably calculated to enable the child to receive educational benefits.'" Cranston Sch. Dist. v. Q.D., No. C.A. 06-538ML, 2008 WL 4145980, at *12 (D.R.I. Sept. 8, 2008) (quoting Florence, 510 U.S. at 11).

The Court finds that the compensatory relief outlined above

appropriately addresses the FAPE denials. Plaintiffs have not otherwise shown that the 2021-2022 IEP or the Young Woods placement were not reasonably calculated for ABL's needs, so they are not entitled to reimbursement for Wolf tuition.

IV. CONCLUSION

For the foregoing reasons, the Court orders the IHO's decision be AFFIRMED IN PART and REVERSED IN PART.  Accordingly, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART, and Defendant's Motion is DENIED.  After resolution of the pending ADA and Rehabilitation Act claims, and in the event the parties are unable to resolve the compensatory education issue by agreement, this case shall be remanded to the Rhode Island Department of Education to determine (1) a compensatory education award for the FAPE denial resulting from the omission of math special education from the 2020-2021 IEP; and (2) a compensatory education award for the Covid-related FAPE denials.  The parties shall brief the issue of attorney's fees following full resolution of the case.[8]


IT IS SO ORDERED.

_WESmith_
_____
William E. Smith
District Judge
Date: November 3, 2023

---

[8] The Court will hold a conference to discuss these remaining issues with the parties.